UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
INTERNATIONAL KOSHER MEAT :
PROCESSING CORP. and GLOBEX :
KOSHER FOODS, INC., :
 :
                   Plaintiffs, : **MEMORANDUM & ORDER**
 :
                  -against- : 04-CV-2092 (DLI)(RER)
 :
PM BEEF GROUP, L.L.C. d/b/a PM :
WINDOM and/or PM HARTLEY, PM :
BEEF HOLDINGS, L.L.C. d/b/a PM :
WINDOM and/or PM HARTLEY, PM :
BEEF GROUP ACQUISITION CORP. :
d/b/a PM WINDOM and/or PM HARTLEY, :
PM BEEF GROUP, L.P. d/b/a PM :
WINDOM and/or PM HARTLEY and :
P-M BEEF, INC. d/b/a PM WINDOM :
and/or PM HARTLEY, PM WINDOM :
and/or PM HARTLEY, :
 :
 :
                  Defendants. :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

      Pursuant to 28 U.S.C. § 1404, defendants move to transfer the instant diversity action from the Eastern District of New York to the United States District Court of Minnesota. Defendants, PM Beef Group, L.L.C., and PM Beef Holdings, L.L.C., (collectively "PM Beef" or "defendants"), are Delaware limited liability companies with principal offices in Kansas City, Missouri. (Answer ¶¶ 18–19.) Plaintiffs, International Kosher Meat Processing Corp. and Globex Kosher Foods, Inc. (collectively "plaintiffs" or "International"), are New York corporations with principal offices in Brooklyn, NY. (Compl. ¶ 1–2.) PM Beef argues that the events that gave rise to the instant lawsuit took place predominantly in its Minnesota meat processing plant, and therefore this action should be transferred to the Minnesota district court. Arguing against transfer, plaintiffs contend that,

because the contract upon which this lawsuit is based was negotiated in New York and the locus of operative facts is in New York, the suit was properly filed here. Additionally, plaintiffs point to the fact that its principal offices are in this district and that four of their non-party witnesses reside here. Finally, plaintiffs contend that compared to Minnesota, New York has a large Orthodox Jewish population and consequently a greater interest in the outcome of the litigation. Thus, the action should remain in the Eastern District of New York. For the reasons that follow, defendant's motion for a change of venue is denied.

## Background

In April 2002, plaintiffs, purveyors of kosher meat, and defendants, meat suppliers, entered into a contract. (Compl. ¶ 11.) The contract called for defendants PM Beef to provide a certain number of cattle per week to be slaughtered under glatt kosher supervision at defendants' meat processing plant in Minnesota. The glatt kosher supervision was to be provided by an independent contractor hired by plaintiffs. (*Id.*) Defendants were then required to ship the processed kosher meat to plaintiffs in Brooklyn, NY, where plaintiffs, in turn, sold the kosher meat to its largely Orthodox Jewish customers. (*Id.* at ¶¶ 12–15.)

Plaintiffs assert claims for breach of contract that generally fall into two categories: (1) those claims having to do with PM Beef's suspension of Rabbi Lazar Jacob from its Minnesota meat processing plant in March 2004—thereby allegedly "destroy[ing] plaintiffs' business" (*Id.* at ¶¶ 18–19, 22–27, 34, 39, 43.); and (2) those claims arising from plaintiffs' allegations that defendants improperly processed, packaged, and priced meat shipped to plaintiffs. (*Id.* at ¶¶ 54, 61, 67-71, 79, 86, 96, 101, 114, 124, 132, 143, 150.)

In its answer, defendants counterclaim (1) seeking a declaratory judgment that an alleged

March 2004 settlement agreement—an agreement that would have resolved the instant claims—is binding (Answer ¶¶ 25, 28); (2) seeking specific performance of the settlement agreement (*Id.* at ¶ 30); (3) asserting a claim for a breach of contract based upon plaintiffs' failure to abide by the settlement agreement (*Id.* at ¶ 37); and (4) asserting a claim for tortious interference with the contract based upon an alleged newspaper ad campaign waged by plaintiffs against defendants in an effort to induce a different kosher certifying agency to breach its contract with defendants (*Id.* at ¶ 43).

## Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The District of Minnesota is a district "where [suit] might have been brought" under 28 U.S.C. § 1391(a) given that a significant portion of the events underlying this action occurred in Minnesota. The central inquiry, then, is whether a transfer would promote convenience and justice.

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992) (*citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). The following factors bear on the court's determination: "(1) the convenience of the witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's

3

choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of circumstances." *In re Hanger Orthopedic Group, Inc. Secs. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (internal citations omitted). Each one of these factors is analyzed below.

**1. The Convenience of the Witnesses**

The convenience of witnesses, especially non-party witnesses, is one of the most important factors in a §1404(a) motion to transfer. *See Id.* at 168 (*citing Viacom Int'l, Inc. v. Melvin Simon Prods.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)).

Defendants have identified thirteen principal witnesses. Although defendants assert that "[t]he PM Beef workers who performed services for [plaintiffs] at the facility . . . live in Minnesota" and are critical witnesses, (AuWerter Aff. ¶ 2), in fact, only two of these witnesses reside in Minnesotta. (Ebert Letter dated July 21, 2006.) The remaining witnesses reside in Ohio, Missouri, Virginia, and Iowa. (*Id.*)

Plaintiffs have identified their key non-party witnesses as Rabbi Lazar Jacob ("Rabbi Jacob"), who lives in Israel, and Rabbis Shlomo Stern and Yitzhok Stein ("the Rabbis"), who reside in New York and are the rabbinical heads of the Congregation hired by plaintiffs as the independent contractor "kosher slaughterers." (Chaimovitz Aff. ¶¶ 4, 19–20.) Plaintiffs contend that the Rabbis will be called to explain why Rabbi Jacob's suspension from defendants' meat processing plant "meant that none of the other rabbis and shochtim could work there any longer."[1] (Binsky Aff. ¶ 4.) Plaintiffs also contend that the Rabbis' testimony is necessary for defending against the counterclaim of tortious interference with contract: they will explain why the newspaper ads that

---

[1] "Shochtim are the only persons qualified to slaughter [animals] in accordance with Jewish dietary laws." *Local 167, Int'l Bhd. of Teamsters v. United States*, 291 U.S. 293, 294 54 S.Ct. 396, 397 (1934).

allegedly discredited the defendants were necessary and legitimate thus negating the legal elements of the claim. (*Id.* at ¶¶ 6–7.) In short, the Rabbis will be testifying as non-party expert witnesses.

Plaintiffs also have identified four additional non-party witnesses to testify about meat shipments sent by defendants that included short-weighted and mis-cut meat. (Binsky Letter dated July 21, 2006.) These four witnesses are all residents of New York. (*Id.*)

Most of defendants' non-party witnesses will be inconvenienced whether the case proceeds in New York or Minnesota. Whereas all but one of plaintiffs' non-party witnesses reside in New York and will be inconvenienced by a transfer to the Minnesota District Court. Therefore, this factor weighs heavily against a transfer.

**2. The Convenience of the Parties**

PM Beef maintains its principal offices in Kansas City, Missouri. Gregory Miller, the current president of PM Beef, resides in Iowa. While Minnesota may be geographically closer to Iowa than to New York, in either case, Mr. Miller lives outside of both districts.

International, on the other hand, maintains its principal offices in Brooklyn, NY. Abraham Chaimovitz, International's president, and Sam Szmulewicz, International's accountant, both reside in New York. (Chaimovitz Aff. ¶¶ 1, 19.) These factors weigh against a transfer.

**3. The Locus of Operative Facts**

Plaintiffs argue that, in a breach of contract action, the locus of operative facts is where the contract was negotiated. (Chaimovitz Aff. ¶¶ 9–10.) However, the locus of operative facts is "where the contract was performed, not where it was proposed and negotiated." *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (*citing Praxair, Inc. v. Morrison Knudsen Corp.*, No. 00 Civ. 0892E (SC), 2001 WL 118585, at *4 (W.D.N.Y. Feb. 6, 2001))

Plaintiffs' assertions notwithstanding, most of the events underlying this action occurred in Minnesota.

At the root of the allegations in the complaint, are defendants' suspension of Rabbi Jacob and defendants' alleged improper cutting, packaging, pricing, and shipping of plaintiffs' kosher meat. The site of events for these claims is defendants' meat processing plant in Minnesota. For example, in the complaint, plaintiffs state the following: "[t]he . . . glatt kosher supervision at defendants' premises are contingent on the presence at said premises of an individual named Rabbi Lazar Jacob" (Compl. ¶ 17); "defendants notified plaintiffs that 'effective immediately' it 'is suspending Rabbi Lazaar [*sic*] Jacob from entering our plant in Windom, Minnesota'" (*Id.* at ¶ 18); "[b]y refusing to allow Rabbi Jacob continued access to their premises, defendants have prevented plaintiffs from providing . . . glatt kosher supervisions for the slaughtering and meat processing done there" (*Id.* at ¶ 25); at times, defendants' shipments to plaintiffs "would not contain the same number of each of the different cuts of meat as the number of glatt kosher forequarters sold and processed" (*Id.* at ¶ 51); "[a]t various times prior to the date of this complaint defendants improperly and in breach of the contract and the agreement miscut the forequarters they sold to plaintiffs so that they included non-kosher meat, which plaintiffs neither asked for nor could use" (*Id.* at ¶ 79); "defendants improperly and in breach of contract . . . sold and shipped to plaintiffs spoiled meat and meat that was not merchantable, saleable to or suitable for plaintiffs' customers." (*Id.* at ¶ 114). The alleged facts in the complaint, therefore, establishes that a majority of operative facts in this case occurred in Minnesota.

Considering the strong nexus between the underlying facts and Minnesota, this factor weighs in favor of a transfer. *See Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002).

### 4. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Neither side has indicated whether any non-party witnesses would be unwilling to testify. As such, the court does not consider this factor in its analysis.

### 5. The Location of Relevant Documents and the Relative Ease of Access to Evidence

Records relating to the underlying claims, *inter alia*, Rabbi Jacob's suspension, the "short" shipments, and the shipments of spoiled meat are in both plaintiffs' and defendants' possession. "[C]ommon sense suggests that retaining this in New York imposes some incrementally greater burden, however slight, on Defendants to copy or transport documents that they would not incur if the case proceeded in [Minnesota]." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. 2004). However, considering the technology currently available, document production is not as onerous today as it once was. Therefore, the court does not find this factor persuasive.

### 6. The Relative Means of the Parties

"A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Neil Bros. Ltd. v. World Wide Lines*, 425 F. Supp. 2d 325, No. 05-CV-1198, 2006 WL 861336, at *6 (E.D.N.Y. April 4, 2006) (*quoting Federman Assocs. v. Paradigm Medical Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, at *4 (S.D.N.Y. Apr.8, 1997)).

Neither party has made a showing of inadequate means. Therefore, the relative means of the parties is a neutral factor in the court's transfer analysis.

### 7. The Forum's Familiarity with the Governing Law

In the context of a motion to transfer the venue of a diversity action, New York choice of law

principles require that courts "apply the law of the state 'which has the most significant contacts with the matter in dispute.'" *Royal Ins. Co. of Amer. v. Tower Records, Inc.*, No. 02-CV-2612, 2002 WL 31385815, at *7 (S.D.N.Y. Oct. 22, 2002) (*quoting Olin Corp. v. Ins. Co. of N. Amer.*, 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990), *aff'd* 929 F. 2d 62 (2d Cir. 1991).

In the instant action, while contacts exist with both New York and Minnesota, Minnesota contacts predominate. As noted above, Minnesota is the locus of operative facts because it is where the contract was performed. *See Billing*, 186 F. Supp. 2d at 378. By plaintiffs' own account, Minnesota is the setting for Rabbi Jacob's alleged wrongful suspension, the mis-cut forequarters, the improperly packaged, and shipped spoiled meat. These claims account for the bulk of the claims in the complaint and thus support the application of Minnesota contract law. While the Minnesota district court would be more familiar with Minnesota law, this factor weighs minimally in favor of transfer as federal courts are accustomed to applying laws of other states. *See Neil Bros. Ltd.*, 2006 WL 861336, at *8 ("[T]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states") (*quoting Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97 Civ. 6308, 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998)).

## 8. The Plaintiff's Choice of Forum

"A plaintiff's choice of forum should not be disturbed unless the balance of the factors . . . tips heavily in favor of a transfer." *Fine Foods Int'l (New York) v. N. Am. Fine Foods, Inc.*, No. 99 CV 1062, 1999 WL 1288681, at *6 (E.D.N.Y. Nov. 12, 1999) (internal quotations and citations omitted). The importance of plaintiffs' choice of forum "diminishes where ... the facts giving rise to the litigation bear little material connection to the chosen forum." *Greenwood Partners v. New*

*Frontier Media Inc*, No. 99 Civ. 9099, 2000 WL 278086, at *2 (S.D.N.Y. Mar. 14, 2000) (citation omitted). Here, International's choice of the Eastern District of New York should be given substantial weight because this jurisdiction has significant connections to the facts giving rise to the controversy. For example, the product was to be delivered in Brooklyn, NY. Plaintiffs' purchase orders originated in New York, and issues related to overcharging were resolved in New York. Plaintiff has therefore established sufficient grounds to uphold venue in this district. *Loudon Plastics, Inc. v. Brenner Tool & Die, Inc.*, 74 F.Supp.2d 182, 187 (N.D.N.Y.1999). Further, "[w]here the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983)

**9. Trial Efficiency and the Interest of Justice, based on the totality of circumstances.**

"The final factor, trial efficiency and the interests of justice, relates largely to issues of judicial economy, primarily the docket conditions and calendar congestion of both the transferor and the transferee districts." *Royal Ins. Co.*, 2002 WL 31385815, at *8. This factor does not relate, as the parties suggest, to the issue of which district has a greater interest in the outcome of the litigation.

Defendants state, and plaintiffs do not dispute, that a civil action takes longer to resolve in the Eastern District of New York than in the District of Minnesota. Relying on *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991), defendants argue that this factor favors a transfer. "Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." *Neil Bros. Ltd.*, 2006 WL 861336, at *9. As of September 30, 2005, the time in which a civil action was resolved in the Eastern District of New York averaged 11.6 months—in contrast to the median time in the

9

District of Minnesota which was 7.5 months. *See* Administrative Office of the United States Courts, *Federal Court Management Statistics*, *available at* http://www.uscourts.gov/cgi-bin/cmsd2005.pl (2005). Though not entitled to much weight, this factor weighs in favor of transfer. *See In re Hanger*, 418 F. Supp. 2d at 171 (according minimal weight to this factor because of a marginal increase in average disposition time).

## Conclusion

Based on the foregoing, particularly the convenience of the non-party witnesses and the plaintiff's choice of forum, this court finds that, overall, a transfer of venue to the Minnesota District Court would not promote convenience and would be against the interests of justice. Accordingly, defendants' motion for a change of venue made pursuant to 28 U.S.C. § 1404 is denied.

SO ORDERED.

DATED:   Brooklyn, New York
         August 8, 2006

                                                    /s/
                                            DORA L. IRIZARRY
                                         United States District Judge